The opinion of the Court was delivered by
Wardlaw, Ch.
John M. Felder, late of Orangeburg, died intestate, leaving a large estate, real and personal, to be distributed accordingto the provisions of our Act of 179 L. He left no wife, nor lineal descendant, nor father, nor mother, nor brother or sister of the whole-blood; and the distributees of his estate are two brothers *510 and a sister of the half-blood, namely, Gabriel Felder, Edmund J. Felder, and Eliza M. ‘Pou, wife of Joseph Pou, and nine nephews and nieces, the children of Samuel J. Felder, a predeceased brother of the whole blood, namely, Paul S. Felder, John H. Felder, Louisa, wife of A. D. Federick, Samuel J. Fel der, Alfred F. Felder, Eugenia M., wife of John Buchanan, jun., Eliza A. Felder, Adella Felder, and Edmund J. Felder. The plaintiffs are the brothers and sister of the half-blood, and the husband of the sister; and the defendants are the children of the pre-deceased brother of the whole-blood, and the husbands of the married women among them. The pleadings present various questions, but the only point submitted to the Chancellor on Circuit was, as to the proportions in which the distributees should take the estate. He decreed, pro forma, to facilitate the parties in obtaining the judgment of the Court of Appeals on the question, that the brothers and sister of the half-blood, and the children of the brother of the whole blood, should each take an equal share. From this decree, the plaintiffs appealed, insisting that the estate of the intestate is to be distributed so that each of the brothers and the sister of the half-blood shall take one-fourth, and the children of the brother of the whole-blood shall take the remaining fourth, to be equally divided among them. After some progress in hearing the appeal, in the Court of Appeals in Equity, argument was stopped ; and the case was referred to the Court of Errors, at the request of two Chancellors, who desired the aid of the Law Judges in settling a rule of property.
The determination of the question between the parties depends upon the construction of the 5th clause of the 1st section of the Act of 1791, for distributing the estates of intestates. (5 Stat. 162.) The clause is in these words: “ If the intestate shall leave no lineal descendant, father, mother, brother or sister of the whole blood, but shall leave a widow, and a brother or sister of the half-blood, and a child or children of a brother or sister of the whole-blood, the widow shall take one moiety of the estate, and the other moiety shall be equally divided be *511 tween the brothers and sisters of the half-blood, and the children of the brothers and sisters of the whole-blood — The children of every deceased brother or sister of the whole-blood, taking among them a share equal to the share of a brother or sister of the half blood. But if there be no brother or sister of the half-blood, then a moiety of the estate shall descend to the child or children of the deceased brother or sister; And if there be no child of a deceased brother or sister of the whole-blood, then the said moiety shall descend to the brothers and sisters of the half-blood.”
The 8th clause of 1st section provides, that “ if the intestate shall leave no widow, the provision for her shall go as the rest of his estate is directed to be distributed, in the respective clauses in which the widow is provided for.”
This Act regulates the distribution of both real and personal estate of intestates. Its scheme is, first, to provide, by general canons, for the distribution of real estate, (which explains the employment of the word descend in the 5th clause,) and then, by a general provision, to declare, that personal estates shall be distributed in the same manner as the canons prescribe for real estate. Sec. 2. It is at once a statute of descents and a statute of distributions ; and, if we advert to the mischiefs in the previous state of the law, in aid of the construction of the Act, we should seek them both in tfie common law concerning descents, and in the statute regulating the succession to personalty. 22 and 23 Ch. 2, c. 10; 2 Stat. 523. The nature of the estate, as real or personal, may affect the rights and interests of the dis-tributees in some cases; for instance, an alien, although he may be next of kin, cannot take the real estate, and may take the personalty of an intestate. But the purpose of the legislature, in the passage of the Act, is not to be ascertained by exclusive reference to one or the other systems of law concerning the two descriptions of estate.
By the law, as it stood at the passage of the Act, those of the half-blood were entirely excluded from the inheritance of real estate, and were admitted, according to propinquity, equally *512 with the whole-blood to the succession of personalty. Our Act making both descriptions of estate a common fund for distribution, compounds as to the half-blood between total exclusion as to one estate, and unrestricted admission as to the other, by prescribing that a brother or sister of the whole-blood shall exclude a brother or sister of the half-blood, andbynot admitting the children of a deceased brother or sister of the half-blood to represent the parent, as in the case of nephews and nieces of the whole-blood; and, except in these instances, by placing or leaving the whole-blood and half-blood in the same category as to succession. Any doubt as to the truth of the last proposition, which might exist upon the terms of the Act, has been removed by authoritative decisions. The cases cited to us on the construction of the Act, are collected in a note. (a)
The distribution of the estate, which is the subject of the *513 the present suit, is confessedly regulated by the 5th canon above quoted. It is conceded on all sides, that the plain terms of the canon call the brothers of the half-blood and the nephews of the whole-blood to the succession; and the only dispute between the parties is, as to the proportion in which these distributees shall take the estate.
The statute does not designate, in such case, the persons to take more definitely than it does the shares to be respectively taken. “ The children of every deceased brother or sister of the whole-blood taking among them a share equal to the share of a brother or sister of the half-blood.” It would be difficult, by any form of words, to express more clearly the purpose of the legislature, that each half-brother should take a share as large as the share to be distributed among the children, however numerous, of a deceased brother of the whole-blood. No ambiguity in the construction of this sentence, standing by itself, has been suggested, except that the extent of the share of a half-brother is not precisely defined. But equality of shares is necessarily implied in every direction for division, unless inequality be expressly prescribed. If a testator should bequeath $1,000, among A., B. and C., so that B. and 0. should together take as much as A., undoubtedly A. would take $500, and B. and C. each $250. This inference of equality is aided in the presence instance by the context of the sentence; and some remarks on the context will be made in the couser of the discussion.
If, then, there be no ambiguity in the words of the enactment, any exposition contrary to the words comes under the ban of the maxim, maledicta expositio quee corrumpit textum. Courts have no authority to make an interpretation of a statute contrary to its express letter, uncontradicted by the context, for nothing can so well exhibit the intention of the legislature, as the words they have employed. A verbis legis non est recedendum. Index animi sermo. Edrich’s case, 5 Rep. J19. It is dangerous, in any case, to allow scope for construction against express words ; but it might be tolerated, where, from the context, or perhaps aliunde, the meaning of the makers is ascertained to *514 be opposed to the words, and great inconvenience would follow from the literal interpretation. In the present instance, no such opposite intention of the legislature, nor such consequent inconvenience, is manifested. If the terms of an Act, liable to no constitutional objection, be clear and positive, Courts must construe and enforce the Act, without regard to the utility or wisdom of its provisions, or to the prudence and learning of those by whom it was enacted. The authority of judicial decisions may depend much upon the reasons assigned for the judgments; the number of the Judges deciding, and their reputation for ability, learning and probity; and the subsequent recognition of the decisions by the profession : but no discrimination, founded upon the character of the members, can be 'made in the authority or construction of the Acts of different legislatures. 2 Des. Eq. R. 647, App. As a matter of liberal curiosity, however, it is desirable to know something of the men who had the chief agency in the preparation and passage of a measure so important and fundamental as to be recommended in the constitution itself. That eminent person, Chancellor DeSaussure, who has contributed more than any other, to the structure of Equity in Soulh-Carolina, and who was amember of the legislature in 1791, informs us, in Stent vs. McLeod, that “ the statute in question was drawn up with great care by the late Mr. Edward Rutledge, after-wards Governor of this State, whose head was as clear as his breast was benevolent and his tongue eloquent, and he had the aid of the revision of the bill by the late eminent lawyer and distinguished citizen, Gen. C. C. Pinckney, as well as several other learned lawyers.” Among these learned lawyers, was Chancellor DeSaussure himself, who, at the same session, drew the Act concerning the Circuit Courts ; and probably Thomas Pinckney, afterwards Governor of the State, who drew the Act, of that session, to establish a Court of Equity. (Ch. Harper’s memoir of Ch. DeSaussure ; Ch. DeSaussure’s memoranda in a copy of 1 Faust.) The Act was carefully considered and discussed, (Journal of 1791, pp. 50, 148, 203, 245,) and its general provisions have been always most acceptable to the people.
*515 It is urged, that we should depart from the plain import of the words above quoted, because the sentence immediately preceding directs that the estate “ shall be equally divided between the brothers and sisters of the half blood and the children of the brothers and sisters of the whole blood.” If there be repugnance between the two sentences, principle would require us to give effect to the last expression of the will of the Legislature ; but there is, in fact, no inconsistency. The latter provision is a specification of the mode in which the equal division directed by the foregoing words shall be made. The dash separating the sentences has the import of “ so that ” or “provided.” “Equally divided” does not necessarily import division into equal shares, and, from its collocation here, must mean divided upon terms of equality and equity — the result of an “ equitable distribution,” according to the phrase of the preamble. The 7th section of this same Act, providing for partition among distributees, who may have unequal shares, gives authority to the Commissioners to recommend specific assignment to one or more of the distributees, or sale of the premises, if, in their opinion, the estate cannot “ be fairly and equally divided between the parties interested therein ” — and surely, here, “equally divided” imports no more than divided upon terms of equal justice to the parties. So, also, the English statute of distributions, of which, as to personalty, our Act of 1791 is merely an amendment, in the third section, provides for the just and equal distribution of the estate of an intestate “ amongst the wife and children, or children’s children” of the intestate, although it is obvious that the shares might be unequal. It was held by this Court, in Collier vs. Collier, 3 Rich. Eq. 555, that the direction of a testator that his estate should be “ equally divided among his heirs above named,” was satisfied by such division as regarded a class of children as one heir. In the more recent case, of Crim vs. Knotts, 4 Rich. Eq. 340, the Court of Appeals in Equity decided that the provision of a testator for equal division among the children of his two brothers, and for the “ use of their children’s part or portion by the two *516 brothers for life,” was satisfied as to equality, by equal division, in the first instance, between the two brothers. It may be further remarked, that it is the former sentence alone which provides for equal division among the half brothers, and thus defines their shares — and this satisfactorily disposes of the phrase “ equally divided.”
Again, it is urged, that the literal interpretation we have adopted violates the general purpose of the Act to postpone the half blood to the whole blood. But there is no evidence of such purpose to postpone, except in the instances enumerated in the Act; and postponement, in specific cases, raises the presumption that general postponement was not intended. There is a seeming anomaly in excluding a half brother and admitting the children of a deceased brother of the whole blood, jure representations, where there is a brother of the whole blood ; and admitting a half brother, and not enlarging the interest of the children of a brother of the whole blood, where there is no brother of the whole blood. But it is quite as just to say that the anomaly consists in excluding the half brother, in the former instance, as to say that it consists in not extending the share of the nephews of the whole blood in the latter instance. If the principle running through the Act be, as Chancellor Harper suggests, in Edwards vs. Barksdale, to call the kindred of the intestate to the succession, according to propinquity, not quantity of blood, the exclusion of the half brother, where there is a brother of the whole blood, is not symmetrical. In fact, however, neither this nor any uniform principle pervades all the canons. The right of kindred to inheritance and succession in estates is not a natural right, but entirely of civil institution; and the laws of different States differ widely, both as to the persons who shall take, and the shares in which they shall take. The Act of 1791 consists of a series of positive regulations on this subject, and our province, as Judges, is to expound them, and not to deflect or overrule them, on conceits of symmetry and policy. It may be that, in the proper arena, the wisdom of the Legislature in these regulations concerning *517 the half blood could be vindicated; but, as Judge Waties remarks, in Poaug ads. Gadsden, “It is unnecessary to inquire into the reasons of the Legislature for limiting the distribution in this way — the words of the Act require this construction, and we have no right to look further.” Where the terms of an Act are not free from ambiguity, it is safer to adhere to any settled construction of them, which may have been long and frequently acted upon, as a rule of property, than to make a contrary decision upon a more exact exposition of the words. An illustration is furnished by our decisions upon the Registry Acts. In the present instance, the maxim of stare decisis has no application. The question we are considering seems never before to liave been submitted to judicial determination ; nor is it remembered by any member of the Court, or suggested to us by counsel, that any estate has been distributed upon one or the other construction contended for. We have been pressed, however, with opinions expressed by Judge Grimke, in his Law of Executors, published in 1798, (pp. 303 and 305,) and by Judge Brevard, in his Digest, published in 1814, (vol. 1, p. 426, n.) in opposition to the conclusion we have attained. A nice criticism would show that the opinions of these Judges are equivocally expressed; but, passing that by, the opinions are not upon a case made, nor after argument, and they are not entitled to much weight. Judge Reeve, of Connecticut, in his treatise on descents, (pp. 339, 410, 512,) prefers the view we have taken. Much reliance is usually placed upon the construction given to a statute by the Judges who lived at the time the statute was passed, as, from their knowledge of the circumstances in which the Legislature acted, they have greater insight of the intention of the Legislature. But Judges Grimke and Brevard express their opinions in pursuance of the ordinary rules of construction, and do not profess to have, and could not well have, any peculiar knowledge of the intention of the Legislature, in the provisions concerning the half blood. Now, in the exposition of a statute by the general rules of construction, Judges contemporaneous with the statute have no advantage whatever over their *518 successors : indeed, are more liable to be misled by knowledge aliunde of the intention of the Legislature.
It is adjudged and decreed, that the estate of the intestate be so distributed, that each of the brothers, and the sister of the half blood, shall take one-fourth, and the children of the predeceased brother of the whole blood shall take the remaining fourth, to be- equally divided among them; and it is ordered that the Circuit decree be modified accordingly.
Johnston, Dunkin and Dargan CC., and Wardlaw, Frost, Withers and Whitner, JJ., concurred.

 No representation among collaterals beyond brothers’ and sisters’ children, grandchild of a deceased brother of the whole-blood excluded by brothers, and children of brothers, of the whole-blood. Foaug ads. Gadsden, 2 Bay, 293.
Maternal aunt excludes children of paternal uncle. Shaffer and Wife vs. Nail, 2 Brev, 160.
Watson vs. Hill, 1 McC. 161, as to construction of the Act of 1797. Brother, in the Act of 1797, means brother of the whole-blood. Mother excludes brother of the half-blood. Lawson vs. Perdriaux, 1 McC. 456. Wrenn vs. Carnes, 4 Des. 405.
Ex parte Mays, 2 Rich. 61. Brother of the half-blood excludes children of a predeceased brother of the half-blood.
Karwon vs. Lowndes, 2 Des. 210. Uncle of the half-blood excludes first-cousins of the whole-blood.
Witsell vs. Linden, 3 Des. 481. Next of kin in the fifth degree exclude those in the sixth.
Guerard vs. Guerard, 4 Des. 405, ?i. Uncle of the half-blood shares equally with uncle of the whole-blood.
Porter vs. Fleming, Ms. Col. 1822. Nephews of the whole-blood exclude uncles.
Brevard vs. Matthews, Ms. Col. April, 1824. Matthews vs. Matthews, Ms. Col. Dec. 1824. Stent vs. McLeod, 2 McC. Ch. 354. Nephews of the whole-blood take per stirpes, and not per capita.
Edwards vs. Baaksdale, 2 Hill, Ch. 416. Cousins of the half the whole and of the half-blood take equally as next of kin.
City Council vs. Hagermayer, Riley’s C.C. 117. Sisterof half-blood excluded by sisters and children of pre-deceased sister of the whole-blood.
Wightman vs. Valk, Dud. Eq. 212. Nieces exclude a grand nephew.
Payne vs. Harris, 3 Strob. Eq. 37. Ureat-grand-children entitled to take per stiipes.